SCOTT A. EDELMAN, SBN 116927
  sedelman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East
Suite 4000
Los Angeles, CA  90067-3026
Telephone:  310.552.8500
Facsimile:   310.551.8741

PERLETTE MICHÈLE JURA, SBN 242332
  pjura@gibsondunn.com
ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
SHAUN A. MATHUR, SBN 311029
  smathur@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

Attorneys for Defendants VERIZON MEDIA
INC., YAHOO! INC., and OATH INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| EVOX PRODUCTIONS LLC, a Delaware limited liability company,<br><br>       Plaintiff,<br><br>  v.<br><br>VERIZON MEDIA INC., a Delaware corporation, YAHOO! INC., a Delaware corporation, OATH, INC., a Delaware corporation, and DOES 1 through 10, inclusive<br><br>       Defendants. | CASE NO. 2:20-cv-2852-CBM-JEM<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>**HEARING:**<br>Date:     July 27, 2021<br>Time:    10:00 a.m.<br>Judge:   Consuelo B. Marshall |

Gibson, Dunn &
Crutcher LLP

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on July 27, 2021, at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Consuelo B. Marshall, in Courtroom 8B of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendants Verizon Media Inc., Oath Inc., and Yahoo! Inc. (collectively, "Defendants") will and hereby do move this Court under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the First Amended Complaint ("FAC") of Plaintiff Evox Productions, LLC's ("Evox") with prejudice.

Evox's initial complaint alleged that Defendants committed copyright infringement when they continued to make Evox's copyrighted automobile images "available" to the public after the license agreement between Evox and Yahoo terminated. Dkt. 4 ¶¶ 29, 34. Defendants moved for judgment on the pleadings, arguing that Evox's "making available" theory of copyright infringement failed as a matter of law under the plain language of the Copyright Act and Ninth Circuit precedent. Dkt. 40. This Court granted Defendants' motion for judgment on the pleadings, concluding that Evox's "'making available theory' fails as a matter of law" and that Evox's copyright infringement claim fails because Evox failed to "allege that Defendants served the images to the public." Dkt. 51 at 4–5. The Court granted Evox leave to amend its pleading but expressly stated that "[a]ny amended complaint filed by Plaintiff cannot assert a claim for copyright infringement based on the 'making available' theory foreclosed by" Ninth Circuit precedent. *Id.* at 8 n.9.

Despite this Court's instruction, Evox's FAC again alleges facts that could support only the "making available" theory of copyright infringement that this Court just dismissed. And Evox's remaining allegations fail under a straightforward application of *American Broadcasting Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431, 448–50 (2014)—in which the Supreme Court made clear that a plaintiff claiming infringement of its exclusive right to display and distribute works to "the public" must allege and prove that

the works were "transmit[ted] to a substantial number of people" who access the works "as ordinary members of the public," not as "owners or possessors" of the works.

Here, Evox alleges that Defendants displayed and distributed the images to Evox and its private investigator, on the Yahoo Autos website, on Yahoo's Tumblr blog, to Google's "web-crawlers," and on third-party Tumblr blogs after Defendants' right to use the images expired on August 2, 2016. But Evox and its investigator did not access the images as ordinary members of the public and do not constitute a substantial number of people. Evox does not allege that Defendants served a single image to a large number of users through Yahoo Autos or Yahoo's Tumblr blog. And Google "web-crawlers" are not people. Evox's copyright infringement claim therefore fails as a matter of law, and the FAC should be dismissed with prejudice in light of Evox's bad faith attempt to replead the "making available" theory and inability to plead a single viable theory of infringement despite being granted leave to amend over seven months into discovery.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all other pleadings and papers on file in this action, any oral argument that may be heard by the Court, and any other matters that the Court may deem appropriate.

Pursuant to Local Rule 7-3, this Motion is made following the conference of counsel, which took place on June 4, 2021. During that conference, the parties were unable to resolve the issues presented in this Motion.

Dated: June 11, 2021

SCOTT A. EDELMAN
PERLETTE MICHELE JURA
ILISSA SAMPLIN
SHAUN A. MATHUR
GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Scott A. Edelman*
              Scott A. Edelman

Attorneys for Defendants VERIZON MEDIA INC., YAHOO! INC., and OATH INC.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................... 1

II. FACTUAL BACKGROUND ..................................................................... 3

    A.    Evox's Business Model.................................................................. 3

    B.    The Parties' License Agreement .................................................. 3

    C.    The Termination Of The License ................................................. 5

    D.    Evox's Initial Complaint ............................................................. 6

    E.    Evox's Amended Complaint ........................................................ 7

III. LEGAL STANDARD............................................................................. 10

IV. ARGUMENT......................................................................................... 11

    A.    Evox's Allegations Concerning Its Investigation Fail As A Matter Of Law Because Neither Evox Nor Its Investigator Constitutes "The Public".................................................................................. 12

    B.    Evox's Allegations Concerning Yahoo Autos Rely On The Same "Making Available" Theory That This Court Already Dismissed ......... 15

    C.    Evox's Allegations Concerning Tumblr Fail As A Matter of Law Because Evox Does Not Allege That Defendants Served Evox Images To "The Public"................................................................. 16

    D.    Evox's Allegations Concerning Google Are Conclusory And Fail As A Matter Of Law Because Defendants Cannot Be Held Liable For Google's Actions ................................................................. 18

    E.    Evox's Allegations Concerning Downstream Displaying And Distributing Of Evox Images By Users Fail As A Matter Of Law..........21

V. CONCLUSION ...................................................................................... 24

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

<u>Page(s)</u>

**CASES**

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
  573 U.S. 431 (2014)..........................................2, 3, 12, 13, 14, 15, 16, 17, 19, 21, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................11, 16, 18, 21

*Automation By Design, Inc. v. Raybestos Prods. Co.*,
  463 F.3d 749 (7th Cir. 2006) ..........................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................11, 18, 19, 21

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ..........................................................11, 24

*CoStar Grp., Inc. v. LoopNet, Inc.*,
  373 F.3d 544 (4th Cir. 2004) ..............................................................19

*Fox Broad. Co. v. Dish Network LLC*,
  160 F. Supp. 3d 1139 (C.D. Cal. 2015)......................................................12

*Fox Broad. Co. v. Dish Network LLC*,
  747 F.3d 1060 (9th Cir. 2014) ............................................................19

*Holloway v. Best Buy Co.*,
  2009 WL 1533668 (N.D. Cal. May 28, 2009)..............................................11

*Johnson v. Buckley*,
  356 F.3d 1067 (9th Cir. 2004) ............................................................11

*Nat'l Hair Growth Ctrs. of Ariz., LLC v. Edmund*,
  2019 WL 2249976 (S.D. Cal. May 23, 2019) ............................................18

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ..............................................................10

*In re Outlaw Lab., LLP*,
  2020 WL 3840559 (S.D. Cal. July 8, 2020)..............................................11

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ......................................................... 12, 17, 19, 20, 23

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 647 (9th Cir. 2017) .................................................. 11, 12, 20, 22

*Religious Tech. Ctr. v. Netcom On-Line Commc'ns Servs., Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ........................................................ 19

*SA Music, LLC v. Amazon.com, Inc.*,
    2020 WL 3128534 (W.D. Wash. June 12, 2020) ...................................... 11

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) ................................................................... 24

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) ........................................... 7, 12, 16, 17, 18, 19, 22, 23

*Vieira v. Mentor Worldwide, LLC*,
    382 F. Supp. 3d 1117 (C.D. Cal. 2019) .................................................... 24

*Yesh Music, LLC v. Amazon.com, Inc.*,
    249 F. Supp. 3d 645 (E.D.N.Y. 2017) ................................................. 13, 14

*Zadrozny v. Bank of New York Mellon*,
    720 F.3d 1163 (9th Cir. 2013) ................................................................... 24

*Zuffa, LLC v. Latham*,
    2020 WL 4458920 (N.D. Cal. Feb. 26, 2020) ................................ 14, 15, 17

**STATUTES**

17 U.S.C. § 106 ....................................................................................................... 19

Cal. Civ. Code § 2304 ............................................................................................ 14

**OTHER AUTHORITIES**

4 Patry on Copyright § 13:11.50 ............................................................................ 20

Salvador Rodriguez, *Verizon sells Tumblr to Wordpress owner six years after Yahoo bought it for $1.1 billion*, CNBC (Aug. 12, 2019), https://cnb.cx/3z8bpn3 ............. 8

iii

# TABLE OF AUTHORITIES
(continued)

Page(s)

**RULES**

Fed. R. Civ. P. 11 ........................................................................... 7, 8, 9, 10, 23

Fed. R. Civ. P. 201 ............................................................................................ 8

Gibson, Dunn & Crutcher LLP

# I.  INTRODUCTION

Plaintiff Evox Productions, LLC ("Evox"), an automobile image company, granted a nonexclusive license to Defendant Yahoo! Inc. and its affiliates (collectively, "Defendants") to use Evox's library of automobile images on Yahoo's online properties. The license granted Defendants the right to terminate the license for any reason after one year, and required Defendants to use "reasonable efforts" to remove the licensed images from "public display on the Yahoo Properties" within 90 days of termination. Defendants exercised their right to terminate the license effective May 4, 2016, but Evox contends that Defendants did not timely remove all Evox images from their Yahoo Properties.  In fact, almost immediately after the 90-day grace period expired, Evox began covertly investigating how many of its images remained available on Defendants' servers relating to Yahoo's Tumblr blog—which Defendants had used solely as a content management system to store images—and the Yahoo Autos website—which had been deprecated in May 2016.  Although the license required Evox to "use commercially reasonable efforts to mitigate damages," Evox waited *almost two years* to alert Defendants of its findings, when it sent Yahoo a demand letter threatening to seek over $300 million in statutory damages under the Copyright Act—*over 2,000 times* the amount Yahoo paid to license the images in any given year.  Evox then filed this lawsuit over two years later, asserting its threatened copyright infringement claim, along with a gratuitous trademark infringement claim.

Both of Evox's claims rested on overbroad legal theories foreclosed by binding Supreme Court and Ninth Circuit precedent.  Evox alleged that Defendants infringed its public display and distribution rights under the Copyright Act when they stored Evox images on their servers and made them "available" to the public on Yahoo's Tumblr blog, and that Defendants infringed Evox's name mark embedded within the images.  In two successive orders, this Court dismissed each claim, concluding that each theory of liability failed as a matter of law.  Although the Court dismissed Evox's trademark claim with prejudice, the Court granted Evox leave to amend its copyright claim—but

instructed Evox not to replead the "making available" theory that it had just dismissed.

Evox has ignored this Court's instructions.  Evox contends that Defendants publicly displayed and distributed its images without authorization, but Evox's First Amended Complaint ("FAC") again alleges facts that could support only the "making available" theory that this Court held is foreclosed by the Copyright Act and Ninth Circuit precedent.  And while Evox's initial complaint targeted only Yahoo's Tumblr blog, Evox now alleges that Defendants infringed Evox's public display and distribution rights in myriad ways.  Specifically, Evox alleges that its images were "reproduced, distributed and displayed" to itself and its investigator during Evox's investigation, on the Yahoo Autos website, on Yahoo's Tumblr blog, to Google "web-crawlers," and on third-party Tumblr blogs after the 90-day grace period expired on August 2, 2016.

All of Evox's conclusory allegations fail under a straightforward application of the Supreme Court's decision in *American Broadcasting Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014).  In *Aereo*, the Court held that the Copyright Act's use of the term "the public" refers to "a large" or "substantial number of people" "who lack any prior relationship to the works" alleged to have been infringed—not to individuals who access the works "in their capacities as owners or possessors" of the works.  *Id.* at 448–50. Thus, to prove infringement of the public display and distribution rights, a copyright owner must allege and prove that the alleged infringer transmitted "the same . . . images . . . to multiple people" "acting as ordinary members of the public." *Id.* at 447, 450.

Evox fails to allege facts sufficient to satisfy *Aereo*'s interpretation of the "the public."  Evox and its investigator did not access any Evox images "as ordinary members of the public" and do not constitute "a substantial number of people" in any event.  Evox does not allege that Defendants served any given image to a large number of users through Yahoo Autos or the Tumblr blog.  And Google "web-crawlers" are not people. Evox's copyright claim therefore fails, and there is no reason to grant Evox further leave to amend given its reinvocation of the dismissed "making available" theory and inability to plead a viable theory of copyright infringement despite having had the benefit of over

Gibson, Dunn &
Crutcher LLP

seven months of fact discovery.  Evox's FAC should be dismissed with prejudice.

## II.  FACTUAL BACKGROUND[1]

### A.    Evox's Business Model

Evox is a stock photography company that specializes in the automobile market. FAC ¶¶ 11, 15.  Over the last 20 years, Evox has photographed "virtually every commercially available automotive vehicle make and model in the United States."  *Id.* ¶ 11.  Evox alleges that it "owns and controls the copyrights in tens of thousands of digital photographs" and "has obtained Certificates of Copyright Registration . . . for these works."  *Id.* ¶ 12.  According to Evox, "[e]ach copyright registration includes multiple photographs, each with their own title, for a specific automobile."  *Id.*

Although Evox generates revenue by "licensing its copyrighted photographs," *id.* ¶ 16, Evox's primary business model is that of a copyright troll.  Evox follows a pattern of covertly investigating former licensees to find images that inadvertently remain available online after the license agreement between the parties terminates.  Rather than promptly notify former licensees of the residual images so that the images may be removed from public access, Evox threatens and often files litigation against its licensing partners in the hopes of securing massive settlements or statutory damages awards that are orders of magnitude greater than the price paid to license Evox's images in the first place.  *See, e.g.*, *Evox Prods., LLC v. AOL Inc.*, No. 2:20-cv-02907-JWH, Dkt. 70 at 5–7 (C.D. Cal. June 4, 2021) (summarizing Evox's "normal pattern" of investigating current and former licensing partners); *Evox Prods., LLC v. Chrome Data Sols.*, No. 3:16-cv-00057-JR, Dkt. 123 (D. Or. Aug. 14, 2019); *Evox Prods., LLC v. Kayak Software Corp.*, No. 2:15-cv-05053-PSG-AGR, Dkt. 1 (C.D. Cal. July 2, 2015); *Evox Prods., LLC v. Gabriels Tech. Sols., Inc.*, No. 2:13-cv-00846-CJC-RZ, Dkt. 18 at 12 (C.D. Cal. June 21, 2013).  This case arises out of that same pattern.

### B.    The Parties' License Agreement

In November 2014, Evox and Yahoo executed a "Content License Agreement"

---

[1]  The allegations in the FAC are treated as true for purposes of this motion only.

that authorized Yahoo to use five distinct sets of images from the "Evox Automotive Image Library." Dkt. 53-4 at 5–6. Evox alleges that Yahoo hosted copies of the images on servers that made the images available to the public on the Yahoo Autos website and Yahoo's Tumblr blog, FAC ¶¶ 17, 28 37—which Yahoo used solely for storage and as a content management system, not for any commercial purpose, *accord id.* ¶ 28.

Section 2 of the license's terms and conditions broadly granted Yahoo "a non-exclusive, fully paid up, royalty free right and license to . . . use, copy, encode, store, archive, distribute, transmit, render into an audible format, modify, create Teaser Content, publicly display and publicly perform" the licensed images. Dkt. 53-4 at 8. In exchange, the license required Yahoo to pay a prorated amount of $70,250 for the first month and a half, $70,250 for the subsequent first full year, and $126,500 for each subsequent year. *Id.* at 6.

The license agreement included an express "Limitation of Liability" provision, providing that:

> Except for both Party's indemnification obligations . . . or with respect to a willful misappropriation of one party's intellectual property rights by the other . . . , and excluding any payment obligations by one party to the other party, in no event will Yahoo, Licensor, or their respective affiliates' total liability arising from or in connection with this Agreement whether in contract, tort or otherwise, exceed the total Licensee Fee amounts paid to Licensor in the 12 month period prior to any claim.

*Id.* at 11. The Limitation of Liability provision also required each party to mitigate any potential damages, stating that "[e]ach Party has a duty to use commercially reasonable efforts to mitigate damages for which the other Party is responsible." *Id.*

Commencing one year after the effective date, Yahoo had the right to "terminate [the license] for any reason or for no reason on thirty (30) days' prior written notice to [Evox]." *Id.* at 12. Upon termination, the license required Yahoo to use only "*reasonable* efforts to remove the [licensed images] . . . from *public display* on the Yahoo Properties within ninety (90) days." *Id.* (emphases added). Thus, contrary to Evox's belief, the license did not require Yahoo "to remove all of Evox's Copyrighted Photographs from all of Yahoo!'s . . . *servers*" or "to take action necessary to prevent

the *possibility* of further reproduction, distribution or display of the Copyrighted Photographs" anywhere on the Internet, FAC ¶ 23 (emphases added)—since mere hosting of an image on a server does not constitute actual "public display," *see* Dkt. 51 at 3–6.  The "reasonable efforts" and Limitation of Liability provisions "survive[d] the expiration or termination" of the license.  Dkt. 53-4 at 12.

## C.    The Termination Of The License

Yahoo exercised its termination right fewer than two years into the license, effective May 4, 2016, FAC ¶¶ 18–20, when the Yahoo Autos site was deprecated.  Upon termination, an automated process was triggered on Yahoo's backend server that identified content associated with the license and disabled the display of Evox images on Yahoo websites.  The images were not indexed and thus could not be searched via Google or other search engines without an exact URL for the image.

Shortly after Yahoo terminated the license and the 90-day grace period expired on August 2, 2016, Evox commenced an investigation pursuant to its normal pattern to determine whether any of its images remained "available and accessible" on Yahoo's properties.  *Id.* ¶¶ 31, 37–38.  As part of that investigation, Evox retained an investigator to confirm Evox's belief that its images could be accessed through Yahoo's Tumblr page after August 2, 2016.  *See id.* ¶ 32.  Evox alleges that the "investigator created a browsable copy of all of Yahoo!'s Tumblr posts," and that "the Copyrighted Photographs were reproduced, distributed and displayed by Yahoo! to the third party investigator in or around October 2016."  *Id.*

Neither Evox nor its investigator found that members of the public had actually viewed or accessed Evox images on the Yahoo Autos website or Yahoo's Tumblr blog after August 2, 2016.  Nor did Evox or its investigator find that Yahoo had actually served Evox images to members of the public or that Yahoo had used the images for any commercial purpose after that date.  Rather, Evox and its investigator found only that members of the public *could have* accessed the images if they visited certain webpages.

Despite determining in October 2016 that residual images could be accessed after

August 2, 2016, Evox did not immediately inform Yahoo (or any other Defendant) of its findings so that the images could be removed—even though the surviving Limitation of Liability provision required Evox to "use commercially reasonable efforts to mitigate [its] damages." Dkt. 53-4 at 11. Instead, Evox waited until March 5, 2018—roughly 17 months after commencing its investigation—to send Yahoo a demand letter, alleging that Yahoo continued to "ma[k]e [Evox's images] available to the public" after license termination. *Id.* at 2–3. Evox demanded that Yahoo "[d]elete or remove any Evox images from any server under Yahoo's control" (even though the license did not require that), and threatened to seek more than $300 million in statutory damages under the Copyright Act if Yahoo did not agree to an *in terrorem* settlement. *Id.* at 3.

**D.      Evox's Initial Complaint**

Evox filed its initial complaint against Defendants on March 27, 2020, asserting claims for copyright and trademark infringement. Dkt. 4. Evox alleged that Defendants were liable for copyright infringement because Evox's images continued to be displayed, distributed, and available on Yahoo's Tumblr blog after August 2016. *See id.* ¶¶ 34–35, 39. Evox alleged that Defendants were liable for trademark infringement because the images Yahoo continued to use after license termination were embedded with Evox's trademark name. *See id.* ¶¶ 45–46.

Both claims were predicated on overbroad theories of liability that binding precedent foreclose as a matter of law. Thus, on June 11, 2020, Defendants filed a motion to dismiss Evox's trademark claim, arguing that Supreme Court and Ninth Circuit precedent clearly hold "that a trademark infringement claim may not be maintained where, as here, the asserted mark (here, Evox's name mark) is embedded within the content of the trademark holder's goods (here, Evox's automobile images), and the defendant allegedly reproduces or displays the content (including the embedded mark) without authorization." Dkt. 26 at 1–2. This Court agreed and dismissed Evox's trademark claim with prejudice on August 19, 2020. Dkt. 35.

After discovery commenced in October 2020, *see* Dkt. 38 at 1, it became clear

that Evox's copyright claim was predicated *solely* on a "making available" theory that numerous courts—including the Ninth Circuit—have squarely rejected.  Defendants filed a motion for judgment on the pleadings on March 5, 2021, arguing that Evox's copyright claim failed as a matter of law because "the Copyright Act does not 'support[]' and the Ninth Circuit has never 'embraced' the 'mak[ing] available' theory of infringement that Evox is pursuing in this case."  Dkt. 40 at 2 (quoting *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 736 (9th Cir. 2019)).

This Court again agreed, holding that Evox's "'making available theory' fails as a matter of law," and that Evox's "copyright infringement claim fails" "because the Complaint does not allege that Defendants served the images to the public."  Dkt. 51 at 4–5.  The Court also rejected Evox's argument that the viability of its "making available" theory need only be addressed "if discovery does not reveal records that establish whether or not there is actual dissemination."  *Id.* at 6.  As the Court explained, "the Complaint does not allege any facts regarding 'actual dissemination' and Plaintiff cannot use discovery as a fishing expedition in order to support conclusory claims."  *Id.* at 6 & n.5 (citing, among other things, Fed. R. Civ. P. 11).  Nevertheless, the Court granted Evox "leave to amend to allege facts, consistent with Plaintiff's Rule 11 obligations, to support its copyright infringement claim."  *Id.* at 8.  But the Court made clear that "[a]ny amended complaint filed by Plaintiff cannot assert a claim for copyright infringement based on the 'making available' theory foreclosed by [*Zillow*]."  *Id.* at 8 n.9.

**E.    Evox's Amended Complaint**

Evox filed its FAC on May 21, 2021.  Dkt. 53.  The FAC is just as deficient as the initial complaint and demonstrates that dismissal with prejudice is warranted given Evox's willingness to say anything to keep its case alive.  Indeed, despite this Court's express instruction that Evox may not reassert a claim based on the "making available" theory and multiple citations to Rule 11, Evox *again* seeks to hold Defendants liable for making its images "available and accessible to . . . internet users" after license termination.  *Id.* ¶ 37.  Evox also alleges without any basis whatsoever that Defendants

"*destroyed evidence* of [the exact number of times Evox's images were reproduced, displayed, or distributed on Yahoo Autos or Yahoo's Tumblr blog] *after Evox put Yahoo! on notice of its infringement*," *id.* ¶¶ 36, 39, 46 (emphases added)—even though Defendants have produced all access log data in their possession, custody, and control; Defendants have repeatedly told Evox that any other such data was destroyed in the ordinary course over a year before Evox sent its March 5, 2018 demand letter; and there is no rule, statute, or regulation that requires access logs to be kept for any set period.[2]

Evox also alleges a grab bag of theories of copyright infringement that fall into the following five categories.

**Evox's Investigation.** Evox alleges that it "first discovered Yahoo!'s continued reproduction, distribution and display of the Copyrighted Photographs on Yahoo!'s Tumblr page in or around October 2016," and then "proceeded to conduct a complete investigation." FAC ¶ 31. Evox alleges that it then hired an investigator to confirm the findings of its investigation. *Id.* ¶ 32. The investigator allegedly "created a browsable copy of all of Yahoo!'s Tumblr posts and a complete log of its transactions with Yahoo!'s servers, which show that the Copyrighted Photographs were reproduced, distributed and displayed by Yahoo! to the third party investigator in or around October 2016." *Id.* Evox also alleges that its images on Yahoo Autos "were reproduced, distributed and displayed in October 2016 as part of Evox's investigation." *Id.* ¶ 38.

**Yahoo Autos.** Evox alleges that Defendants operated the Yahoo Autos website during and after the term of the license, and that Evox's images "were reproduced, distributed and displayed" on the website's "main landing page" and "subpages." FAC ¶¶ 17, 37. Evox further alleges that "[t]he Yahoo! Autos webpages that reproduced,

---

[2] Evox also alleges that the logs for Yahoo's Tumblr page "are solely within Yahoo!'s possession." FAC ¶ 36. But as Evox knows, Defendants no longer own, control, or operate Tumblr and thus any additional records are solely in the possession of an unaffiliated third party. *See* Salvador Rodriguez, *Verizon sells Tumblr to Wordpress owner six years after Yahoo bought it for $1.1 billion*, CNBC (Aug. 12, 2019), https://cnb.cx/3z8bpn3; Fed. R. Civ. P. 201. Evox is free to avail itself of the third-party discovery process if it is unsatisfied with the records produced to date.

*(Cont'd on next page)*

MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 2:20-CV-2852-CBM-JEM

Gibson, Dunn & Crutcher LLP

1    distributed, and displayed Evox's Copyrighted Photographs were available and
2    accessible to any internet user through at least October 2016," and that "certain of the
3    Copyrighted Photographs were reproduced, distributed and displayed from Yahoo!'s
4    servers via the Yahoo! Autos webpages" after August 2, 2016. *Id.* ¶ 37–38.[3]

5    **Yahoo's Tumblr blog.**  Evox alleges that Defendants created a Tumblr blog titled
6    "evox on Yahoo" before August 2, 2016, that "reproduced, distributed and displayed"
7    all the images Evox had provided pursuant to the license "in thousands of posts."  FAC
8    ¶ 28.   Evox alleges that Defendants "did nothing to remove Evox's Copyrighted
9    Photographs from its Tumblr blog or prevent access to the Copyrighted Photographs on
10   its servers after" license termination, and instead continued to "reproduce, display and
11   distribute" its images "to any member of the public who visited Yahoo!'s 'evox on
12   Yahoo' Tumblr blog" until June 2019.  *Id.* ¶ 30, 33, 45.  According to Evox, "Yahoo!'s
13   own records" (the ones Evox says Defendants "destroyed") "show that after August 2,
14   2016, Tumblr users 'liked' or 're-blogged' the Copyrighted Photographs from Yahoo!'s
15   Tumblr webpage."    *Id.* ¶ 34.    Evox contends that "posts containing numerous
16   Copyrighted Photographs were 'liked' or 're-blogged'" in October 2016 (when Evox
17   conducted its investigation), and that "[m]ore Copyrighted Photographs were 'liked' in
18   February 2017, November 2017, and June 2018."  *Id.*  Evox further contends that "[a]s
19   of September 2019, there were at least 67 re-blogged Tumblr posts that displayed
20   multiple Copyrighted Photographs," *id.* ¶ 45, and that "Yahoo! must distribute, and the
21   Copyrighted Photograph is reproduced and displayed, in order for a user to post, like, or
22   re-blog a Copyrighted Photograph," *id.* ¶ 34.

23   **Google Image Search.**  Evox alleges that Yahoo's Tumblr blog "included html
24   code that enabled [Google's] web-crawlers . . . to index the pages for photographs and
25   to display those photographs in search results," and that Yahoo "reproduce[d],
26   distribute[d] and display[ed] the Copyrighted Photographs after August 2, 2016 to web-

27
28   _____
     [3]  Evox's allegations concerning Yahoo Autos are puzzling given that the site was
     deprecated in May 2016 when the license terminated.

crawlers, as evidenced by the display of Copyrighted Photographs in Google search results, distributed from Yahoo!'s servers." FAC ¶ 41. Evox also alleges "[o]n information and belief" that, "given the sheer number of Copyrighted Photographs at issue and the volume of searches" on Google generally, Yahoo "reproduced, distributed and displayed the Copyrighted Photographs after August 2, 2016 when users clicked on a Google search result that led them to Yahoo!'s Tumblr blog." *Id.* ¶ 40.[4] According to Evox, that "Copyrighted Photographs were distributed by Yahoo! to Google for Google to display in various search results . . . shows that Yahoo! reproduced, distributed and displayed the Copyrighted Photographs after August 2, 2016." *Id.* ¶ 41.

*Downstream copies, displays, and distributions by users.* Evox alleges that "[a]ny internet user could visit Yahoo!'s [Tumblr] blog and access, reproduce, and display all of the Copyrighted Photographs"; that "users could create their own Tumblr blog and 're-blog' the Copyrighted Photographs" so that the images would appear on their separate blogs; and that "users could link the Copyrighted Photographs to other social media websites via shortcuts that Yahoo! supplied." FAC ¶ 29. According to Evox, "Yahoo! would still reproduce, distribute and display the Copyrighted Photographs to anyone who visited any of those other webpages (on Tumblr or otherwise) that contained a link to the Copyrighted Photographs on Yahoo!'s servers." *Id.* Evox therefore alleges that Defendants committed copyright infringement whenever a user visited "any other Tumblr blog" after August 2, 2016, "that had re-blogged the Copyrighted Photograph(s)." *Id.* ¶ 30.

## III.  LEGAL STANDARD

A claim should be dismissed under Federal Rule 12(b)(6) where the plaintiff fails to assert "a cognizable legal theory" or the complaint contains "[in]sufficient facts . . . to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

---

[4] Evox's basis for alleging that "users clicked on a Google search result that led them to Yahoo!'s Tumblr blog" is unclear in light of Evox's obvious inability to monitor users' activity across the Internet and its repeated allegation that it does not possess access logs showing whether and when its images might have been served to users from Defendants' servers. FAC ¶¶ 39–40.

2001).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and that rises "above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint falls short of this standard "if it tenders naked assertions devoid of further factual enhancement" or "pleads facts that are merely consistent with a defendant's liability."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Where a plaintiff fails to state a plausible claim for relief and any attempts to amend the pleadings would be futile, the court should dismiss the complaint with prejudice, without leave to amend.  *Johnson v. Buckley*, 356 F.3d 1067, 1077–78 (9th Cir. 2004).

Where, as here, a complaint asserts multiple theories of liability in support of a single claim, the court may on a Rule 12 motion "parse [the] claim[] for relief and strike less than an entire count."  *Holloway v. Best Buy Co.*, 2009 WL 1533668, at *4 (N.D. Cal. May 28, 2009) (ruling on a Rule 12(c) motion); *see also In re Outlaw Lab., LLP*, 2020 WL 3840559, at *4 n.2 (S.D. Cal. July 8, 2020) (same); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion); *see, e.g.*, *SA Music, LLC v. Amazon.com, Inc.*, 2020 WL 3128534, at *7 (W.D. Wash. June 12, 2020) (granting Rule 12(b)(6) motion and dismissing only one of plaintiff's theories in support of copyright claim).

## IV.  ARGUMENT

To prove a copyright infringement claim under the Copyright Act, a copyright owner must "demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106" and "show causation (also referred to as 'volitional conduct') by the defendant[s]."  *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 647, 666 (9th Cir. 2017).

This case concerns the "public distribution" and "public display" rights under

Section 106(3) and (5) of the Copyright Act.  As relevant here, a copyrighted image is "distributed" only when it is actually disseminated to a user, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007), such that a copy of the work "changes hands," *Fox Broad. Co. v. Dish Network LLC*, 160 F. Supp. 3d 1139, 1170 (C.D. Cal. 2015).  An image is "displayed" only when "a computer owner . . . stores an image as electronic information *and serves* that electronic information directly to [a] user."  *Amazon.com*, 508 F.3d at 1159.  A user must actually "access[] th[e] image[]" for a display to occur; a claim premised only on the "potential for future display is purely speculative" and insufficient as a matter of law.  *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 736–37 (9th Cir. 2019).  An image is distributed or displayed to "the public" only when it has been "transmit[ted] to a substantial number of people" who "lack any prior relationship to the work."  *Am. Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431, 448–50 (2014).[5]

The "volitional conduct" requirement stands for the "proposition that proximate causation historically underlines copyright infringement liability no less than other torts."  *Giganews*, 847 F.3d at 666.  Put simply, "*direct* liability must be premised on conduct that can reasonably be described as the *direct cause* of the infringement."  *Id.*  "Infringement of the reproduction right," for example, "requires copying *by* the defendant, which comprises a requirement that the defendant cause the copying."  *Id.*

Evox's five theories of liability fail to satisfy the foregoing standards.

## A.  Evox's Allegations Concerning Its Investigation Fail As A Matter Of Law Because Neither Evox Nor Its Investigator Constitutes "The Public"

Evox contends that Defendants are liable for copyright infringement—and that Evox is entitled to over $300 million in statutory damages under the Copyright Act—because Evox images were allegedly displayed and distributed to Evox and its investigator as part of its investigation in October 2016.  FAC ¶¶ 30–32, 38.  This theory

---

[5]  Evox also alleges that Defendants continued to "reproduce" its images after August 2, 2016.  *See, e.g.*, FAC ¶¶ 24, 29, 30, 33, 34, 37.  Defendants interpret these allegations as referring to "the automatic reproduction" that occurs whenever an image is served to a user's computer.  *Id.* ¶ 29.  As the Ninth Circuit has held, such automatic copying does not give rise to liability under the Copyright Act.  *See Zillow*, 918 F.3d at 732, 737; *Amazon*, 508 F.3d at 1169–70.

Gibson, Dunn &
Crutcher LLP

of liability fails as a matter of law under the Supreme Court's 2014 decision in *Aereo*.

In *Aereo*, the Supreme Court held that the defendant, a service that streamed the plaintiff's copyrighted television programs to subscribers over the Internet, violated the Copyright Act because such streaming constituted a performance of the plaintiffs' works to "the public" as that term is defined in the Act.  573 U.S. at 451.  The Court explained that "'the public' consists of a large group of people outside of a family of friends" who "lack any prior relationship to the works." *Id.* at 448–49.  "[T]he public" does not refer to isolated individuals who access works "in their capacities as owners or possessors" of the works; rather, it refers to "a substantial number of people" who access the works "as ordinary members of the public." *Id.* at 449–50.  Indeed, "when an entity [transmits a work] to a set of people, whether they constitute 'the public' often depends upon their relationship to the underlying work." *Id.* at 448.  The Court provided the following illustration to drive home the point:

> When, for example, a valet parking attendant returns cars to their drivers, we would not say that the parking service provides cars "to the public." We would say that a car dealership, on the other hand, does provide cars to the public, for it sells cars to individuals who lack a pre-existing relationship to the cars.

*Id.* at 448–49.

*Aereo* forecloses Evox's theory of liability predicated on access of the images by Evox and its investigator.  Evox alleges that it "owns and controls the copyrights" in all the images at issue in this case, FAC ¶ 12, and thus Evox's alleged access of the images in or around October 2016 as an "owner[]" and "possessor[]" of the images means that Evox did not access the images as "ordinary members of the public," *Aereo*, 573 U.S. at 450; *see, e.g.*, *Yesh Music, LLC v. Amazon.com, Inc.*, 249 F. Supp. 3d 645, 660 (E.D.N.Y. 2017) ("[a]pplying [*Aereo*'s] reasoning here, when users downloaded and streamed plaintiffs' songs from their personal locker, that distribution was not one to the 'public' because the users . . . received the songs in their capacities as owners").

The same is true of Evox's investigator—which Evox hired to "act in [Evox's] stead," *Automation By Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 757 (7th Cir.

2006), and confirm the results of Evox's investigation, FAC ¶¶ 31–32.  Evox alleges that it "conduct[ed] a complete investigation" of Defendants' alleged infringement, *id.* ¶ 31—meaning that Evox's subsequent hiring of an investigator was solely to confirm the results of Evox's investigation and to manufacture a claim for hundreds of millions of dollars in statutory damages under the Copyright Act.  As Evox's agent for purposes of confirming whether Defendants had used the images after license termination, the investigator was "authorized to do any acts which [its] principal might do"—including accessing and copying the images.  Cal. Civ. Code § 2304.  In fact, accessing, copying, and cataloguing the images for use in future litigation was the entire point of hiring an investigator in the first place.  Evox does not allege that the investigator lacked authorization to "create[] a browsable copy of all of Yahoo!'s Tumblr posts" allegedly containing Evox images, FAC ¶ 32; *see also Yesh*, 249 F. Supp. 3d at 660 (recognizing that *Aereo*'s discussion of "owners or possessors" is not limited to the owners of the copyrights in the work but extends to anyone who lawfully uses or possesses the work)— and thus the investigator accessed the images as an authorized owner or possessor of the images, not as an "ordinary member[] of the public," *Aereo*, 573 U.S. at 450.

At minimum, any display or distribution of Evox images to the investigator is insufficient to give rise to a copyright infringement claim as a matter of law because the investigator is only one person whereas "the public" consists of "a large" or "substantial" number of people.  *Aereo*, 573 U.S. at 448, 450.  In *Zuffa, LLC v. Latham*, 2020 WL 4458920, at *3 (N.D. Cal. Feb. 26, 2020), for example, the court held that a "public" display does not occur where an investigator is the only person outside of a family and friends that views a copyrighted work.  There, the plaintiff owned the copyright for the UFC 229 broadcast that aired in October 2018.  *Id.* at *1.  On the day the fight aired, the plaintiff sent its investigator to the defendant's club that was exhibiting the fight to over 20 people, "most of whom were family or friends."  *Id.*  After the investigator saw the fight airing at the club, the plaintiff sued the defendant for copyright infringement claiming that the defendant had publicly displayed the plaintiff's work without

authorization.  *Id.* at *2.  Relying on *Aereo*, the court concluded that the plaintiff had failed to establish a "public" display because the investigator was the only person in attendance outside of the defendant's family and friends and "[o]ne person is not a 'large group of people.'"  *Id.* at *3 (quoting *Aereo*, 573 U.S. at 448).  So too here.

Evox's theory of liability predicated on the alleged display and distribution of Evox images to itself and its investigator fails as a matter of law.  Both Evox and its investigator were authorized owners or possessors of the images, and at minimum Evox has failed to allege that the images were displayed or distributed to a large group of people who lacked a prior relationship to the images.

## B.  Evox's Allegations Concerning Yahoo Autos Rely On The Same "Making Available" Theory That This Court Already Dismissed

Evox also alleges that Defendants committed copyright infringement when they used Evox's images on the Yahoo Autos website after August 2, 2016, even though the site was shut down in May 2016.  Evox's allegations concerning Yahoo Autos fail to state a copyright infringement claim for three reasons.

*First*, Evox alleges that its images appeared on the "main landing page" and "subpages" of Yahoo Autos, and that the webpages containing its images "were available and accessible to any internet user through at least October 2016."  FAC ¶ 37.  Evox's allegation that its images "were available and accessible" invokes the exact same "making available" theory that this Court (a) held "fails as a matter of law" in light of "the Ninth Circuit's binding decision in *VHT, Inc. v. Zillow Group, Inc.*," Dkt. 51 at 4–5, and (b) instructed Evox not to replead in its amended complaint, *id.* at 8 & n.9.  Evox did not file a timely motion to reconsider the Court's order dismissing Evox's "making available" theory, and thus Evox has no good faith basis for repleading the theory.

*Second*, Evox alleges that some of its images "were reproduced, distributed and displayed from Yahoo!'s servers via the Yahoo! Autos webpages" "[a]fter August 2, 2016."  FAC ¶ 38.  But in using the passive voice, Evox fails to allege that Yahoo served even a single Evox image directly to a "large group of people" "acting as ordinary

members of the public" (as opposed to "owners or possessors" of the images) after August 2, 2016. *Aereo*, 573 U.S. at 448, 450. And Evox fails to allege that "a substantial number," *id.* at 450, of "users accessed [Evox's] images through" Yahoo Autos after that date, *Zillow*, 918 F.3d at 736.

*Third*, Evox alleges three times in the two paragraphs it dedicates to Yahoo Autos that its images were "reproduced, distributed or displayed." FAC ¶¶ 37–38. Such conclusory recitations of the rights conferred by Section 106 of the Copyright Act are insufficient to state a claim, and Evox "cannot use discovery as a fishing expedition in order to support conclusory claims." Dkt. 51 at 6 (quoting *Iqbal*, 556 U.S. at 679 (filing a complaint "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions")).

Evox has failed to state a claim that Defendants infringed Evox's copyrights on the Yahoo Autos website.

## C. Evox's Allegations Concerning Tumblr Fail As A Matter of Law Because Evox Does Not Allege That Defendants Served Evox Images To "The Public"

Evox alleges that Defendants committed copyright infringement when they continued to use Evox's images on Yahoo's Tumblr blog after August 2, 2016. Evox's allegations as to Tumblr fail to state a copyright infringement claim for three reasons.

*First*, Evox again alleges facts that could support only the "'making available' theory foreclosed by [*Zillow*]" and this Court's prior order. Dkt. 51 at 8 n.9. Evox alleges that Defendants "did nothing to remove" its images from the Tumblr blog "or prevent access" to the images on Defendants' servers after license termination, and that "any member of the public who visited" the blog after August 2, 2016, would have seen Evox's images. FAC ¶¶ 30, 33, 45. But the mere hosting of a copyrighted image on a server does not violate any of the exclusive rights conferred by the Copyright Act, and nothing in the Act or the parties' license agreement required Defendants to prevent access to images stored on their servers. *See* Dkt. 53-4 at 12 (requiring only that Yahoo remove the images "from public display on the Yahoo Properties within ninety (90)

days" of license termination).  And Evox fails to allege that the images were actually served or disseminated to a large number of people outside of Evox and its investigator.  *See Aereo*, 573 U.S. at 450; *Amazon*, 508 F.3d at 1159, 1162.  Rather, Evox's allegations establish only the "potential" for display and distribution—which "is purely speculative" and insufficient as a matter of law.  *Zillow*, 918 F.3d at 737.

*Second*, Evox's allegations concerning "likes" and "re-blogs" of the Tumblr posts containing Evox images fail to state a claim under *Aereo*.  Evox alleges that all the images Evox licensed to Yahoo were dispersed among "thousands of posts" on Yahoo's Tumblr blog.  FAC ¶ 28.  Evox also alleges that blog posts containing Evox images were "liked" or "re-blogged" in October 2016, February 2017, November 2017, and June 2018, and that there were "at least 67 re-blogged Tumblr posts that displayed multiple Copyrighted Photographs" as of September 2019.  *Id.* ¶¶ 34, 45.  According to Evox, the images within a blog post are displayed and distributed whenever the blog post is "liked" or "re-blogged."  *Id.* ¶ 34.

For one thing, Evox does not allege whether any or how many of the 67 blog posts were re-blogged *after* Defendants' rights allegedly expired on August 2, 2016.  For another, Evox does not allege that any given blog post was "liked" or "re-blogged" more than once.  That means Evox has not alleged that Defendants served any particular image within a blog post that was "liked" or "re-blogged" to more than one Tumblr user, let alone to "a substantial number" of Tumblr users (excluding Evox and its investigator).  *Aereo*, 573 U.S. at 450.  As the *Zuffa* court recognized, "[o]ne person is not a 'large group of people,'" 2020 WL 4458920, at *3 (quoting *Aereo*, 573 U.S. at 448)—and thus Evox has failed to allege that Defendants served or disseminated any particular image to "the public."  Indeed, Evox alleges that each image is its own "work" for purposes of copyright law (and especially for purposes of statutory damages), FAC ¶ 50, and so Evox must allege and ultimately prove copyright infringement on an image-by-image basis.  *See Aereo*, 573 U.S. at 447–48 ("when an entity communicates the same contemporaneously perceptible images and sounds to multiple people, it transmits a

performance to them regardless of the number of discrete communications it makes"); *Zillow*, 918 F.3d at 734–35 (reviewing direct infringement verdict on image-by-image basis, and noting that the jury verdict form asked the jury "to specify how many VHT photos were directly infringed"); *Nat'l Hair Growth Ctrs. of Ariz., LLC v. Edmund*, 2019 WL 2249976, at *6 (S.D. Cal. May 23, 2019) (requiring plaintiff to identify the exact number of images infringed).  Evox has not come close to doing so here.

*Third*, Evox's remaining allegations concerning Tumblr are conclusory and speculative.  Evox's allegation that its images "were reproduced, distributed and displayed on Yahoo!'s Tumblr blog" after August 2, 2016, is conclusory and not entitled to any weight.  FAC ¶ 30; *see also id.* ¶¶ 31–33 (repeating the same conclusory allegation); *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); Dkt. 51 at 7–8 (citing cases).  And Evox's allegation that the alleged "likes" and "re-blogs" "account for only a small portion of all users that displayed the Copyrighted Photographs on Tumblr after August 2, 2016," FAC ¶ 35, is speculative and devoid of factual support, *see Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level"); *id.* ("the pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action").

Despite possessing "Yahoo!'s . . . records," FAC ¶ 34, Evox cannot allege that Defendants actually served or disseminated even a single Evox image to a substantial number of ordinary Tumblr users.  Evox's theory of liability targeting Yahoo's Tumblr blog therefore fails.

### D.   Evox's Allegations Concerning Google Are Conclusory And Fail As A Matter Of Law Because Defendants Cannot Be Held Liable For Google's Actions

Evox next alleges that Defendants committed copyright infringement when they displayed and distributed Evox images to Google's "web-crawlers" and Google then displayed the images in search results.  *See* FAC ¶¶ 40–41.  Evox's theory of liability predicated on the acts of Google and its web-crawlers fail for at least three reasons.

*First*, Evox alleges that "Yahoo! did reproduce, distribute and display the Copyrighted Photographs after August 2, 2016 *to web-crawlers* . . . distributed from Yahoo!'s servers." FAC ¶ 41 (emphasis added). According to Evox, Defendants' display and distribution of images "to web-crawlers" is "evidenced by the display of Copyrighted Photographs in Google search results." *Id.* To the extent Evox contends that Defendants committed copyright infringement when web-crawlers automatically crawled Yahoo's Tumblr blog "to index the pages for photographs," *id.*, that theory fails.

As stated, the Copyright Act prohibits the unauthorized display and distribution of copyrighted works to "the public," 17 U.S.C. § 106, and the Supreme Court has held that "'the public' consists of a large group of *people*," *Aereo*, 573 U.S. at 448 (emphasis added). Web-crawlers are not people, and so any alleged display or distribution of images to a web-crawler cannot give rise to liability for copyright infringement.

Moreover, the volitional-conduct requirement is not satisfied where an automated web-crawler takes an image from a website owner's server. A plaintiff asserting a direct copyright infringement claim against a website owner must show that the website owner was "*actively involved* in the infringement." *Zillow*, 918 F.3d at 732. A website owner is not actively involved in the infringement where "automatic copying" of copyrighted material is "instigated by others," and the website owner does nothing other than exercise general control over its website. *Id.*; *see also Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060, 1067 (9th Cir. 2014); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550–55 (4th Cir. 2004); *Religious Tech. Ctr. v. Netcom On-Line Commc'ns Servs., Inc.*, 907 F. Supp. 1361, 1369 (N.D. Cal. 1995).

A web-crawler is "a software program that automatically accesses thousands of websites . . . and indexes them within a database on Google's computers." *Amazon*, 508 F.3d at 1155. Thus, any access of Evox's images on Defendants' servers by web-crawlers would not have been a display or distribution *by* Defendants—but, rather, a taking of images from Defendants' servers by an automated process over which Defendants exercise no control. *See Zillow*, 918 F.3d at 732 ("automatic copying,

storage, and transmission of copyrighted materials, when instigated by others, do not render [a website owner] strictly liable for copyright infringement"); 4 Patry on Copyright § 13:11.50 (no distribution when "third parties are reaching into the individuals' hard drive and taking an electronic file").

*Second*, Evox alleges that "Yahoo!'s Tumblr blog included html code that enabled web-crawlers, such as Google's, . . . to display [the] photographs in search results," and that "the Copyrighted Photographs were distributed by Yahoo! to Google *for Google to display* in various search results." FAC ¶ 41 (emphasis added). These allegations appear to invoke the "making available" theory that this Court previously dismissed. Even if not, Evox's attempt to hold Defendants liable for displays *by Google* nevertheless fails as a matter of law. Evox has not asserted a secondary liability claim, and "*direct* liability must be premised on conduct that can reasonably be described as the *direct cause* of the infringement." *Giganews*, 847 F.3d at 666. "Infringement of the [display] right [thus] requires [displaying] *by* . . . [D]efendant[s]"—not Google. *Id.* Indeed, the "thumbnail" versions of images that Google indexes and provides in response to a user's inquiry "are stored in Google's servers." *Amazon*, 508 F.3d at 1155. For this reason, the Ninth Circuit has held that Google, if anyone, infringes when it "store[s]" and "communicate[s] copies of those thumbnails to Google's users." *Id.* at 1160.[6]

*Third*, Evox's remaining allegations concerning Google are conclusory and speculative. Evox alleges "[o]n information and belief" that, "given the sheer number of Copyrighted Photographs at issue and the volume of searches" on Google "for automotive-related content in the U.S.," Defendants "reproduced, distributed and displayed the Copyrighted Photographs after August 2, 2016 when users clicked on a Google search result that led them to Yahoo!'s Tumblr blog." FAC ¶ 40. But copyright infringement liability does not exist merely because users may have visited Yahoo's Tumblr blog; rather, liability would exist only if a *substantial number of users* accessed

---

[6]  The Ninth Circuit held that Google's use of thumbnail versions of the plaintiff's copyrighted images constituted fair use. *See Amazon*, 508 F.3d at 1163–68.

Gibson, Dunn &
Crutcher LLP

and viewed the *same* copyrighted work. *See Aereo*, 573 U.S. at 447–48 ("when an entity communicates the *same* contemporaneously perceptible images and sounds to *multiple people*, it transmits a performance to them regardless of the number of discrete communications it makes") (emphases added); *id.* at 450 ("an entity does not transmit to the public if it does not transmit to a substantial number of people"). Evox does not allege that a substantial number of users actually "clicked on a Google search result that led them to Yahoo!'s Tumblr blog" where they accessed and viewed the same Evox images. Instead, Evox offers conclusory allegations "that are merely consistent with a defendant's liability," *Iqbal*, 556 U.S. at 678, and that only "create[] a suspicion of" illegality, *Twombly*, 550 U.S. at 555. Such allegations "stop[] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

Evox's allegations as to Google fail as a matter of law.

## E. Evox's Allegations Concerning Downstream Displaying And Distributing Of Evox Images By Users Fail As A Matter Of Law

Evox alleges that Tumblr users could re-blog Evox images from Yahoo's Tumblr blog so that the images appeared on the users' separate blogs, and that Defendants "reproduced, distributed and displayed" Evox images "to any member of the public who visited" any "Tumblr blog that had re-blogged" the images. FAC ¶¶ 29–30. Evox's theory of liability relating to access of images on third-party blogs fails for two reasons.

*First*, Evox's theory fails under *Aereo* because Evox does not allege that a "large" or "substantial number" of Tumblr users actually accessed and viewed the "same" Evox images on Tumblr blogs that had re-blogged the images from Yahoo's Tumblr blog. 573 U.S. at 447–48, 450. Instead, Evox alleges that "Yahoo! would . . . reproduce, distribute and display the Copyrighted Photographs to anyone who visited any . . . other webpage[] (on Tumblr or otherwise) that contained a link to the Copyrighted Photographs on Yahoo!'s servers." FAC ¶ 29. But Evox's conclusory and speculative allegation "merely creates a suspicion" of infringement, *Twombly*, 550 U.S. at 555, and this Court has already held that Evox "cannot use discovery as a fishing expedition in order to

support conclusory claims," Dkt. 51 at 6 & n.6, 7–8.

*Second*, Evox's theory fails to satisfy the volitional conduct requirement. To satisfy the proximate cause standard embodied in the requirement, Evox must allege facts showing that Defendants were "*actively involved* in the [alleged] infringement." *Zillow*, 918 F.3d at 731–32. "[T]here must be actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the machine owner himself trespassed on the exclusive domain of the copyright owner." *Id.* at 732; *see also Giganews*, 847 F.3d at 666 ("courts must determine who is close enough to the infringing event to be considered the most important cause"). "[T]o demonstrate volitional conduct," therefore, Evox must show that Defendants "exercised control (other than by general operation of its website); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of its photos." *Zillow*, 918 F.3d at 732.

Here, the causal chain was broken when an Internet user re-blogged a post on Yahoo's Tumblr blog and another user accessed the post's images on a third-party blog. Although Defendants may have chosen to store Evox images on their servers and to make them available on Yahoo's Tumblr blog, Defendants did not choose to make the images available on blogs belonging to third parties. *See Zillow*, 918 F.3d at 732 ("[m]ost of the time [the volitional conduct] issue will come down to who selects the copyrighted content: the defendant or its customers") (quoting *Aereo*, 573 U.S. at 454–55 (Scalia, J., dissenting)). Aside from passively operating the Yahoo Tumblr blog, Defendants could not control the images after they appeared on a user's browser, or prevent a user from copying, displaying, or distributing the images elsewhere on the Internet—either before or after license termination. *See* FAC ¶ 29. For this reason, imposing liability on Defendants for any downstream displays of Evox images would open the door to copyright infringement claims for the display of images on third-party blogs *even during the duration of a license*. Indeed, the license here authorized Yahoo to use Evox images only "in connection with any Yahoo Property." Dkt. 53-4 at 8. But

a third party's blog is not a "Yahoo Property"—meaning that, under Evox's theory, copyright infringement liability would exist for any downstream display of the images even before the parties' license terminated. The volitional conduct requirement forecloses such an absurd result.

To be sure, Evox alleges that re-blogged images appearing on third-party blogs were served from Defendants' servers, *see* FAC ¶ 29, and *Amazon* stated that it is the "interaction" between a user's browser and the computer storing an infringing image that "causes an infringing image to appear on the user's computer screen." 508 F.3d at 1161. But *Amazon* did not consider the volitional conduct issue, as the underlying website owners were not parties to the case and "Google [did] not dispute" that "third-party websites directly infringed [the plaintiff's] copyright[s]." *Id.* at 1169. And the Ninth Circuit subsequently held in a case against a website owner that volitional conduct does not exist where, as here, the "automatic . . . transmission of copyrighted materials" is "instigated by others." *Zillow*, 918 F.3d at 732. Accordingly, Evox's theory of liability predicated on the acts of third parties fails as a matter of law.

\*   \*   \*

This Court previously granted Evox leave to amend its pleading because it might "be able to allege additional facts regarding Defendants' actual display and distribution of the copyrighted photographs, and Defendants fail[ed] to demonstrate bad faith by [Evox] or any prejudice." Dkt. 51 at 8. But despite having the ability to fish through Defendants' records since discovery opened in October 2020, Dkt. 38 at 1, and having asserted every conceivable theory of copyright infringement it could devise in its amended pleading, Evox *still* cannot allege a plausible claim of copyright infringement that comports with Supreme Court and Ninth Circuit precedent or this Court's prior order. Indeed, Evox again alleges facts that could support only the "making available" theory that this Court already dismissed—even though this Court warned Evox with multiple citations to Rule 11 not to replead that theory of liability. *See* Dkt. 51 at 6 n.5, 8 & n.9. And because Evox lacks evidence of infringement, Evox has now turned to

alleging that Defendants *destroyed* certain records after being put on notice of Evox's claims, even though Defendants have repeatedly informed Evox that they have produced all such records in their possession, custody, and control—and Evox admits that it possesses "Yahoo!'s own records" relating to Tumblr.  FAC ¶ 34.

There is no reason to believe that granting Evox another opportunity to amend its pleading will yield a different result.  Since Evox filed its initial complaint for copyright and trademark infringement, Evox has sought over $300 million in statutory damages based on expansive legal theories that are foreclosed by Supreme Court and Ninth Circuit cases that predate the filing of the initial complaint.   Even after the Court dismissed Evox's initial theories in two separate orders, Evox filed an amended pleading asserting *five even more expansive theories of liability*—so that it could continue to look through Defendants' files and claim entitlement to over $300 million for the allegedly unauthorized hosting of automobile images.  But at some point, all litigation must end—especially where, as here, the "plaintiff has previously amended the complaint" but still failed to allege a plausible claim of liability.  *Cafasso*, 637 F.3d 1047, 1058 (9th Cir. 2011); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013); *Zadrozny v. Bank of New York Mellon*, 720 F.3d 1163, 1173 (9th Cir. 2013); *Vieira v. Mentor Worldwide, LLC*, 382 F. Supp. 3d 1117, 1132–33 (C.D. Cal. 2019). Accordingly, the Court should dismiss Evox's copyright infringement claim with prejudice, without further leave to amend.

## V.  CONCLUSION

Evox's First Amended Complaint should be dismissed with prejudice.

Gibson, Dunn &
Crutcher LLP

1    DATED: June 11, 2021

2                                    SCOTT A. EDELMAN
                                     PERLETTE MICHELE JURA
3                                    ILISSA SAMPLIN
                                     SHAUN A. MATHUR
4                                    GIBSON, DUNN & CRUTCHER LLP

5
                                     By:  /s/ *Scott A. Edelman*
6                                              Scott A. Edelman

7                                    Attorneys for Defendants VERIZON MEDIA
                                     INC., YAHOO! INC., and OATH INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28